UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| RETIREMENT PROGRAM FOR EMPLOYEES OF THE TOWN OF FAIRFIELD and RETIREMENT PROGRAM FOR FAIRFIELD POLICE AND FIREMEN'S RETIREMENT SYSTEM, on behalf of themselves and all others similarly situated, <br><br> *Plaintiffs,* <br><br> v. <br><br> ALLIANZ GLOBAL INVESTORS U.S. LLC, <br><br> *Defendant.* | Case No. _____ <br><br> CLASS ACTION COMPLAINT <br><br> DEMAND FOR JURY TRIAL |

Plaintiffs Retirement Program for Employees of the Town of Fairfield and Retirement Program for Fairfield Police and Firemen's Retirement System (collectively, "Plaintiffs" or "Fairfield), on behalf of themselves and the classes of all others similarly situated defined below, for their complaint against defendant Allianz Global Investors U.S. LLC ("Defendant" or "AllianzGI"), allege the following based on (a) personal knowledge, (b) the investigation of counsel, and (c) information and belief.

## **INTRODUCTION**

1.      Plaintiffs bring this action on behalf of themselves and a proposed class and subclass of investors in four hedge funds (collectively, the "Classes") to recover damages based on AllianzGI's negligence, breach of fiduciary duty and breach of contract, which led to the hedge funds – and its investors – suffering severe, catastrophic financial losses.

2.     AllianzGI's suite of Structured Alpha hedge funds began with the Allianz Structured Alpha U.S. Equity 250 LLC Fund ("Alpha 250") in 2005 with the stated goal of achieving returns uncorrelated to the S&P 500's performance. AllianzGI's strategy was to gain passive exposure to the S&P 500 index while using an options-based trading strategy to deliver "alpha" returns, uncorrelated to the direction of equities and volatility, such that the Fund was designed to outperform "irrespective of the market environment." AllianzGI subsequently added fund offerings, including AllianzGI Structured Alpha Global Equity 350 LLC ("Alpha Global 350"), AllianzGI Structured Alpha Global 500 LLC ("Alpha Global 500"), and AllianzGI U.S. Equity Structured Alpha 500 LLC ("Alpha U.S. 500") (collectively with Alpha 250, the "Structured Alpha Funds").

3.     A core component of AllianzGI's Structured Alpha investment strategy was to provide protection against catastrophic tail events or market crashes, guarding against sudden extreme market downturns such as the selloff that occurred on Monday, October 19, 1987 ("Black Monday"), the biggest single day market selloff in history. Yet, the market downturn which occurred during February and March of 2020 revealed that AllianzGI, in breach of its duties and obligations as the investment and managing member of the Structured Alpha Funds, had deviated from its investment mandate, and that the Structured Alpha Funds were positioned to incur significant losses. Acting in further derogation of its duties, AllianzGI restructured the Funds in late February and early March in an effort to reverse the losses incurred, selling protection to *other* investors seeking protection against increased market volatility and the declining market conditions, exposing the Structured Alpha funds to even greater losses, despite the fact that the Allianz's chief economist had been warning of these volatile and declining market conditions since January 2020.

4.      AllianzGI engaged in this conduct for its own economic self-interest, and to the detriment of the Structured Alpha Funds and investors, in an effort to salvage its own substantial performance-based fees, which, given the Funds' performance and the potential fallout that could result from AllianzGI's failures, were in jeopardy for quarter-end March 31, 2020 and the foreseeable future. Rather than protecting against the severe market downturn, AllianzGI abandoned this pillar of its investment strategy, along with the risk management and controls that were supposed to be in place at both the portfolio and firm-wide levels to protect investors against such outcomes.

5.      As a result of AllianzGI's conduct, the Structured Alpha Funds suffered massive losses, resulting in billions of dollars in losses for investors, including Fairfield and the proposed Classes.

## PARTIES

6.      Plaintiff Retirement Program for Employees of the Town of Fairfield (the "Employee Fund") is a citizen of the State of Connecticut.

7.      Retirement Program for Fairfield Police and Firemen's Retirement System (the "Police and Firemen Fund") is a citizen of the State of Connecticut.

8.      Defendant Allianz Global Investors U.S. LLC is a limited liability company formed and existing under the laws of, and is a citizen of, the State of Delaware. At all material times, Allianz Global U.S. was the managing member, and the investment manager, of the Structured Alpha Funds.

## JURISDICTION AND VENUE

9.      This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(d)(2)(A), because this case is a class action where the aggregate claims of all members of the proposed Classes exceed $5,000,000.00, exclusive of interest and costs, and the Plaintiffs and most members of the proposed Classes are citizens of a state different from Defendant.

10.     Venue is proper in this judicial District pursuant to 28 U.S.C. § 1391(b) and (c) and 18 U.S.C. § 1965, because Defendant transacts business in, is found in, and/or has agents in this District, and because some of the actions giving rise to this complaint took place within this District.

11.     The Court has personal jurisdiction over the Defendant.  Defendant has transacted business, maintained substantial contacts, and/or committed overt acts in furtherance of the illegal scheme and conspiracy throughout the United States, including in this District.  The scheme and conspiracy have been directed at, and have had the intended effect of, causing injury to persons residing in, located in, or doing business throughout the United States, including in this District.

12.     In addition, pursuant to the applicable agreement(s) between Plaintiffs and AllianzGI, the parties consented to the jurisdiction of this Court and this District as the venue for purposes of this action.

**FACTUAL BACKGROUND**

I. **AllianzGI Structured Alpha Funds**

13. AllianzGI's Structured Alpha Funds were designed to provide investors with passive exposure to equities markets while also providing "consistent, uncorrelated returns" or *alpha*, "regardless of the direction of equities and volatility,"[1] and were so marketed to investors. According to AllianzGI, Alpha 250 had a "bond-like risk profile," meaning it "is a low-risk investment relative to equities and high-yield bonds."[2]

14. AllianzGI promotional materials shown to Fairfield and the Classes described the Alpha 250 strategy as an "[e]nhanced large-cap core equity strategy that pursues outperformance via the options markets" and is "[d]esigned to outperform whether the equity markets are up or down, smooth or volatile."[3] Alpha 250 had a "three-pronged investment objective" approach, which included "protect[ing] against a market crash," and "protecting against a tail event or market crash."[4] Allianz GI touted the Structured Alpha strategy as "proprietary and very robust," seeking "risk controlled returns" pursuing a "combination of long and short volatility positons via selling and buying options."[5] Greg Tournant, Allianz's Head of Structured Products Group and the portfolio manager for the Structured Alpha Funds, characterized this proprietary strategy as follows: "Generally, there's an excess demand on puts and an excess supply of call options in

---

[1] *Allianz Structured Alpha[,] Aiming to generate alpha regardless of market waves*, ALLIANZGI (July 2016), http://insights.allianzgi.com/story/575fac9a45dc338d4bce830c/page/1 (accessed July 27, 2020).

[2] *Id.*

[3] Allianz Global Investors, *Structured Alpha US Equity 250 Presentation to Town of Fairfield*, (Sept. 2017), at 31 (hereinafter "AllianzGI Fairfield Presentation").

[4] *Id.* at 11.

[5] *Id.*

the market. We quantify those options going against the decision-making process most options market participants use."[6]

15.     AllianzGI consistently and repeatedly promoted Structured Alpha to Fairfield and to members of the Classes as "constructed in anticipation of any type of market environment" and stated that "some [options positions] are designed to profit when equity markets are behaving normally; others are meant to benefit only in the event of a large index moves; and still others whose purpose *is to provide protection in the event of a market crash*."[7] AllianzGI outlined its "Investment Philosophy and Objective" to Fairfield and the Classes as follows:



---

[6] *Id.*

[7] *Structured Alpha US 250 Fund*, ALLIANZGI (Oct. 2018), https://nordic.allianzgi.com/-/media/allianzgi/eu/nordic/products/az-structured-alpha-us-equity-250/181870-allianzgi-beyond-active-vs-passive-sr2509.pdf (accessed July 27, 2020).

16.     AllianzGI stated that it would enter into three types of trades to achieve the Structured Alpha Fund's investment objectives. First, AllianzGI would sell options based on "Range-Bound Spread" analysis, meaning that AllianzGI would use its proprietary statistical analysis to determine levels of resistance and support and sell options with strike prices AllianzGI's analysis concluded were most likely to expire worthless.[8] Range-Bound Spread trades profit when the market remains stable: in other words, if the referenced asset stays within a particular range.  If the price of the asset falls outside of the range, however, AllianzGI would be required to pay out on that trade and would lose money. AllianzGI represented that selling calls with carefully calibrated strike prices had contributed two-thirds of Alpha 250's uncorrelated gains, or alpha, since Alpha 250's inception.[9]

17.     Second, Allianz would enter into "Directional Spread" positions, or "long-short option positions that benefit from a large index move to the upside and/or downside."[10] According to Allianz, these positions, which were the opposite of the Range-Bound positions, would enable the fund to "add incremental gains when markets behave less typically."[11]

18.     Third, Allianz represented that Alpha 250 would buy puts options "in a greater quantity than sold" with strike distances calculated to account for a 10-25% short-term market crash. While these options would typically expire worthless (because crashes are rare), the "primary objective of the hedging positions [was] to protect the strategy from a short-term equity-market crash," which Allianz defined as "a decline of 10% to 15% in less than 5 days."[12]

---

[8]  AllianzGI Fairfield Presentation, at 14.

[9]  *Id.*

[10] *Id.*

[11] *Id.*

[12] *Id.* at 15.

As noted above, AllianzGI would "always be a net buyer of put options," providing the Structured Alpha Funds with "protection against a [catastrophic] tail event or market crash."[13]

19.     Greg Tournant, the Structured Alpha Funds' portfolio manager, likened the Structured Alpha trading strategy to the functioning of an insurance company that would have to pay out only when there is a "catastrophic event," Tournant said: "I would also add the fact that given the positions that we buy to protect ourselves against those catastrophic shocks, those kinds of risk insurance positions, that you could label those as reinsurance."

20.     The Structured Alpha Funds' strategy is based on the notion that option values are directly related to the expected volatility of the underlying asset. The more volatile an underlying asset, the more expensive an option on that asset becomes. According to AllianzGI's presentation materials and Structured Alpha Fund Agreements, AllianzGI would likely lose some money on the short-term puts it sold in the event of a sharp market downturn, but those losses would be offset by "out of the money" put options purchased by Allianz rising in value.

21.     According to AllianzGI, this strategy would enable the Structured Alpha Funds to weather a rapid market downturn and while "[t]he portfolio could underperform for a few weeks" in such an environment, in the end "[h]igher volatility levels should enable greater outperformance in subsequent months."[14] These strategies and investment objectives employed by AllianzGI applied across all of the Structured Alpha Funds.

22.     Further, AllianzGI heavily promoted Structured Alpha's "risk management," consisting of "proprietary "scenario and stress testing" and portfolio and risk "monitoring," which strengthened Structured Alpha's execution.  AllianzGI's "Two pillars of risk

---

[13] *Id.* at 11.

[14] AllianzGI Fairfield Presentation, at 19.

management" ensured that "[r]isk is continuously managed and monitored at both the portfolio level by the investment team and the firm level." "Real-time risk management and monitoring" and "scenario and stress testing" at the portfolio level was supported and enhanced by firm level evaluation and monitoring of portfolio risk, which included "independent" oversight and monitoring of "daily trade activity and weekly risk profiles," "stress tests" and full performance analyses of statistical and risk metrics.[15]

## II.  **FAIRFIELD'S INVESTMENT IN ALPHA US 250**

23.    AllianzGI reinforced the Structured Alpha strategy and investment objectives – and risk management – in direct presentations to Fairfield and members of the Classes.  In a meeting with Fairfield's Joint Retirement Investment Board prior to Fairfield's initial investment, AllianzGI representatives, including Jeffrey Sheran, AllianzGI managing director and senior product specialist for Structured Alpha, echoed the index-based investment approach, extolling Structured Alpha's "consistent and on-target returns" through its "three-pronged investment objective," consisting of simultaneous long and short volatility positions, allowing the Fund to be "non-directional."  At all times, Structured Alpha's exposure was covered.  Thus, for example, Structured Alpha would never sell "naked puts," requiring it to pay out on option without holding a short position on the underlying security.

24.    In connection with Fairfield's investment, Fairfield entered into several agreements with AllianzGI, including the Fifth Amended and Restated Limited Liability Company Agreement of AllianzGI Structured Alpha U.S. Equity 250 LLC (the "Alpha 250 LLC Agreement"), AllianzGI Structured Alpha U.S. Equity 250 LLC Confidential Private Placement Memorandum dated December 31, 2017 (the "Alpha 250 PPM"), and the AllianzGI Structured

---

[15] *Id.* at 13, 21

Alpha U.S. Equity 250 Subscription Agreement (the "Alpha 250 Subscription Agreement")
(collectively, the "Structured Alpha Agreements"). Members of the Classes, which invested in
Alpha 250, as well as the other Structured Alpha Funds, entered into agreements with AllianzGI
that are substantively identical with respect to the material provisions, and, as described herein,
the Structured Alpha Funds under portfolio manager Greg Tournant – and monitored at the firm
level – employed the same investment, approach, objectives, strategy and risk controls.  The sole
difference between the Funds was the targeted alpha-based return.

25.      The Structured Alpha Agreements, *inter alia*, established AllianzGI as the
Managing Member of the of the Structured Alpha Funds with responsibility for the general
management of the Structured Alpha Funds, including its role as investment manager, and
appointed AllianzGI attorney-in-fact for the Structured Alpha Funds.

26.      The Alpha 250 PPM describes the Alpha US 250's investment objective as
follows:

> The investment objective of the Fund is to outperform the Standard and Poor's 500
> Composite Stock Index (the "Index").[] [AllianzGI] seeks to outperform the Index by
> approximately 375 basis points (3.75%), gross of fees and expenses. Any actual net
> return to investors will be reduced by [AllianzGI's fees] (as defined herein) and the
> expenses borne by the Fund. Taking into consideration the anticipated effect of
> [AllianzGI's fees], [AllianzGI] seeks to outperform the Index by approximately 250 basis
> points (2.5%).[16]

27.      The PPM's for the other Structured Alpha Funds described their investment
objectives substantively identically, with the exception being the targeted outperformance of the
Fund's referenced benchmark (the S&P 500 for the Alpha US 250 and the MSCI ACWI
Investable Market Index for the Alpha 350 and 500), or alpha-based return. For example, the

---

[16] *AllianzGI Structured Alpha U.S. Equity LLC Confidential Private Placement Memorandum*, AllianzGI
(Sept. 1, 2017), at 19 (hereinafter "PPM").

Alpha US 500 PPM stated that AllianzGI sought to outperform by 750 basis points (7.5%), gross of fees and expenses, which would result in a net return of 500 basis points for investors once AllianzGI's fees were taken out.

28.    In order to outperform the S&P 500, AllianzGI represented it would employ "Beta Component" and "Alpha Component" strategies. The "Beta Component" consisted of "a futures trading program, cash investment, exchange traded funds, equity swaps or securities to achieve exposure to the [S&P 500]."[17] The "Alpha Component" was described by AllianzGI as "utilize[ing] a proprietary model to construct option spreads, typically buying and selling puts and calls on equity indices" with the objective of creating "option based profit zones that upon expiration of the options will capture positive payoffs if the level of the underlying index (or other instrument) ends up within the profit zone."[18]

## SUBSTANTIVE ALLEGATIONS

29.    In late January 2020, global equity markets began to experience increased volatility based on fears that the COVID-19 pandemic would paralyze the global economy. On February 3, 2020, Mohamed El-Erian, chief economist of AllianzSE (AllianzGI's parent company) appeared on CNBC and voiced concerns that the COVID-19 pandemic would cause a prolonged economic downturn, stating:

> For a long time I thought the market sentiment was so strong that we could overcome a mounting list of economic uncertainty . . . But the coronavirus is different. It is big. It's going to paralyze China. It's going to cascade throughout the global economy . . . Importantly, it cannot be countered by central bank policy . . . We should pay more attention to this. And we should try and resist our inclination to buy the dip.[19]

---

[17] *Id*., at 7.

[18] *Id*.

[19] *See* Matthew J. Belvedere, *Coronavirus is going to 'paralyze China' — El-Erian warns against buying dips*, CNBC (Feb. 3, 2020), https://www.cnbc.com/2020/02/03/el-erian-says-coronavirus-to-paralyze-china-dont-buy-stock-dips.html (accessed July 22, 2020).

30.     Consistent with El-Erian's forecast, COVID-19 continued to cause an uptick in volatility at the end of February 2020 and into March 2020. This was reflected in movement of the CBOE Volatility Index[20] or "VIX", which opened on February 3, 2020 at 18.64 and closed on February 28, 2020 at 40.11.

31.     Despite the fact that the stated mandate of the Structured Alpha Funds was to *always* remain hedged against sharp market downturns by being a net buyer of puts, Structured Alpha's exposure during that time period demonstrated that it was not meaningfully hedged.  In addition, AllianzGI restructured the Structured Alpha Funds in or about late February and/or early March by making investments which would only profit in the event of decreased volatility. For example, on February 29, 2020 the Alpha US 250 fund had sold short-term equity puts worth $117 million but held only $67 in long equity puts, making the Alpha US 250 fund a net *seller* of equity put options. As such, the Alpha US 250 would only profit if the market became less volatile.  In addition to deviating from its investment mandate, Structured Alpha contravened its risk management, including the guidance from the firm's chief economist, and failed to conduct or abide by required stress testing.

32.     The following is a breakdown of the Alpha US 250's holdings as of February 29, 2020:

---

[20] The VIX is a market index that represents the market's expectations for market volatility over the next 30 days and typically moves upward as equity markets experience downturns. Because it reflects investors' level of fear of market stress, it is also commonly referred to as the "fear gauge".

| Alpha US 250's Options Positions as of February 29, 2020 | | |
|---|---|---|
| Position | Size of Position | Impact of Market Decline on Value |
| Long Equity Puts | $67 Million | Increase |
| **Short equity puts** | **$117 million** | **Decrease** |
| Long equity calls | $18 million | Decrease |
| Short equity calls | $5 million | Increase |
| Long volatility puts | 0 | |
| Short volatility puts | $2 million | Increase |
| Long volatility calls | 0 | |
| **Short volatility calls** | **$16 million** | **Decrease** |
| Net position: | Short $55 million | Decrease |

33.    These positions resulted in the Alpha 250 Fund being short volatility. The short

equity puts AllianzGI sold would decrease in value as the market declined, and the short

volatility calls it sold would similarly decrease in value as volatility increased during the market

decline. The following chart illustrates the magnitude of AllianzGI's gamble that market

volatility would rapidly decrease and that equity markets would stabilize:



34.    AllianzGI similarly positioned the rest of the Structured Alpha Funds, meaning

they would only profit from a volatility decrease and stable markets.

35.     AllianzGI's positioning of the Structured Alpha Funds in such a way meant that not only would the Structured Alpha Funds suffer substantial losses in a severe market downtown, but that *any* market downturn would result in outsized losses compared to any S&P 500 decline. For example, if the S&P 500 were to decline 20% without any increase in VIX, in other words, a slow non-crisis-level decline, the Alpha US 250's positions would decline in value by 40%. This would have been revealed had AllianzGI adhered to its mandate of conducting rigorous stress testing.

36.     Positioning the Alpha US 250, and the rest of the Structured Alpha Funds, in such a way *in the middle of the COVID-19 pandemic*, was an abandonment of the Structured Alpha Funds' mandate and represents a complete failure of any risk management on the part of AllianzGI.

## I.     <u>AllianzGI Mismanaged the Structured Alpha Funds</u>

37.     AllianzGI's risk management failure in February and March resulted in losses as volatility climbed and the equity markets declined. At this point, Allianz could have restructured the Structured Alpha Funds in a manner consistent with its mandate that would have properly protected the Structured Alpha Funds from incurring more substantial losses should markets continue to experience extreme market volatility. However, AllianzGI *yet again* wavered from its mandate, locked in losses, and doubled down on its losing bets that market volatility would quickly subside.

38.     AllianzGI, chose to (1) buy out the short positions of its counterparties in the short-term equity puts it had sold, which locked in substantial losses; (2) sell additional volatility calls, again positioning the Structured Alpha Funds as short volatility; and (3) failed to take any steps to hedge the Structured Alpha Funds to protect against further severe market sell-offs.

39.     Unfortunately for Structured Alpha Fund investors, the steep equity market selloff continued in early March. On March 9, 2020 the S&P 500 fell 7% moments after markets opened and trading was halted on the New York Stock Exchange, causing the Structured Alpha Funds to once again suffer massive losses.

40.     That same week, on March 13, 2020 institutional investment consultant Aon, who was privy to the positions of the Alpha US 250, Alpha Global 350, and Alpha Global 500 funds, issued a "flash report," which noted that AllianzGI's Structured Alpha strategies had "experienced a drawdown that significantly exceeds [Aon's] expectations" and downgraded the Structured Alpha Funds to "in review" as it sought explanations. At that point, Aon calculated the Alpha US 250's year-to-date performance as down 11%; the Alpha Global 350's year-to-date performance as down 15%; and the Alpha Global 500's year-to-date performance as down 22%.

41.     On March 16, 2020, the COVID-19 related market turmoil culminated when United States equity markets experienced the second-biggest single day drop in history, behind only Black Monday of 1987. The S&P 500, the index to which the Structured Alpha funds had both passive and options-based exposure, closed the day down approximately 12% from its opening levels.

42.     Based on AllianzGI's representations, investors in the Structured Alpha funds while suffering short term losses, should have been protected from massive losses, consistent with the following graphic presented by AllianzGI:



Rapid change from low to high volatility: performance may be more volatile and the portfolio may underperform for a few weeks. However, higher volatility levels would enable greater excess-returns potential in subsequent months.

43.     However, on March 25, 2020 AllianzGI informed Fairfield and the Classes that instead of "underperform[ing] for a few weeks" before generating "greater excess-returns" in the subsequent months, the Structured Alpha Funds had suffered massive losses. For example, the Alpha US 250 fund declined over $559 million in the month of March, a loss of approximately 41.59%, nearly quadruple the S&P 500's decline of approximately 12.5% during the same time. Similarly, the Alpha Global 350 declined 52.18%, compared to a decline of the MSCI ACWI Investable Market Index (the "IMI") (the Alpha Global 350's benchmark index) of only 14.39%. Finally, the Alpha Global 500 (which also uses the IMI as its benchmark index) lost 72.30%:



During the March 25th call, Allianz refused to provide any detail to investors, including Fairfield, as to what investments led to the massive losses, stating  "they were still unsure what exactly went wrong" and not telling "them how much money they'd get back, or when to expect it."[21] AllianzGI has to date failed to provide any substantive explanation to Fairfield and the Classes.

---

[21] Justin Baer, *The Day Coronavirus Nearly Broke the Financial Markets*, WALL ST. JOURNAL (May 20, 2020), https://www.wsj.com/articles/the-day-coronavirus-nearly-broke-the-financial-markets-11589982288 (accessed July 17, 2020).

II.    **The Structured Alpha Funds' Management Fee Structure Caused AllianzGI to Act Out of Self-Interest Rather Than in the Interests of Plaintiffs and the Classes**

44.    AllianzGI's behavior during the Class Period is explained by how AllianzGI is compensated for its management of the Structured Alpha Funds. Rather than receiving a flat management fee, pursuant to the Structured Alpha Agreements, AllianzGI received a performance fee of 25% or 30% of the "Net Capital Appreciation" for each Structured Alpha Fund during each quarter in which the Structured Alpha Fund exceeded the performance of the S&P 500 or IMI.

45.    This compensation structure meant that AllianzGI would not receive any fees for its management of any Structured Alpha Fund that failed to outperform the applicable benchmark index. Additionally, AllianzGI would not be entitled to any performance fee at all until it recovered the amount of underperformance through over-performance in the future.

46.    Whether AllianzGI was entitled to a performance fee was determined by the balance of a "Recovery Account." If a Structured Alpha Fund underperformed the applicable benchmark index, the amount by which it underperformed would be added to the balance of the "Recovery Account." AllianzGI was only entitled to a performance fee if the balance of the Recovery Account was zero. The only way to reduce the balance of the Recovery Account was through a Structured Alpha Fund's outperformance of the applicable benchmark index. For example, if the Alpha US 250 underperformed the S&P 500 by a percentage equal to $100 million of the Structured Alpha Funds assets, $100 million would be added to the Recovery Account balance and the AllianzGI would not be entitled to any performance fees at all until it outperformed the S&P 500 by a percentage equivalent to $100 million of the Structured Alpha Fund's assets.

47.     By the end of February 2020, the Alpha US 250, Alpha Global 350, and Alpha Global 500 funds were underperforming the applicable benchmark indices by 5%, 7%, and 10% respectively. Thus, AllianzGI needed to reverse (and recoup) these losses by March 31, 2020, or it would not receive what were typically hundreds of millions in performance fees.  Given the circumstances, AllianzGI faced losing its substantial performance-based fees at quarter-end (March 31, 2020), and for the foreseeable future.

48.     AllianzGI thus doubled down on its risky strategy, and, as part of that strategy, sold a significant number of VIX call options with strike prices ranging from $25-30 and an expiration date of March 18, 2020 (without any meaningful hedging). However, as March 18th approached, the VIX had increased substantially, going from 33.42 at the close on March 2, 2020 to 75.91 on March 16, 2020, which significantly *decreased* the value of AllianzGI positions. For example, if the VIX closed at $75 on March 18, 2020, Allianz would have had to pay the difference between the price at expiration ($75) and the strike price on those options multiplied by 100. Under this scenario, if VIX settled at $75 on March 18, 2020, each call option AllianzGI sold cost AllianzGI the difference between $75 and the strike price times 100.

49.     As described above, the VIX closed at $75.91 on March 17, 2020. The VIX settlement price is calculated by the opening price of VIX on the date of settlement, and VIX is calculated using a complex mathematical formula that "estimates the expected volatility of the S&P 500 index by aggregating the weighted prices of multiple SPX puts and calls over a wide range of strike prices." Some experts have concluded that VIX is "susceptible to manipulation" after observing "aggressive orders to buy or sell [options used to calculate VIX] prior to market settlement that do not occur at other times and that they are related to [VIX] price deviations"

which is "consistent with one would expect to see in the case of market manipulation of certain settlements."[22]

50.     Prior to the settlement of VIX at the March 18, 2020 market open, according to one industry expert, "[s]omebody sold the options used to calculate the VIX. You see that volume of some options — things that never trade — were traded in hundreds of thousands of lots. To do this, you need a lot of capital because you're going to be selling a lot of options. Big banks can't do it. It would have to be an institution."[23] On March 18, 2020 the VIX opened at $69.37, down 8.6% from its March 17, 2020 close. During the day on March 18, 2020 the VIX closed at $76.45, an increase of just 0.7% from the previous days close, indicating that investor sentiment, despite the 8.6% move down at open, had changed very little.

51.      Investors that had sold large amount of VIX call options expiring on March 18, 2020, *as AllianzGI did*, would have a substantial motive to lower the VIX settlement price on March 18. AllianzGI's actions described above would have violated both the Structured Alpha Funds' mandate and the Structured Alpha Agreements with Plaintiffs and the Classes.

52.     On March 27, 2020 AllianzGI publicly announced that its Structured Alpha Funds had suffered massive losses and that two of its other funds—Structured Alpha 1000 and Structured Alpha 1000 Plus— had suffered such massive losses (one lost 97% of its value) that they were being liquidated.

53.     Also on March 27, 2020, Aon issued another "flash report" in which it downgraded the Structured Alpha Funds to "sell" and stated that AllianzGI had been "less than

---

[22] John M. Griffin & Amin Sham, *Manipulation in the VIX?* (May 23, 2017), at 35-36, https://ssrn.com/abstract=2972979 (accessed July 27, 2020).

[23] Leanna Orr, *Teachers' Pension Lost $774M in Allianz Volatility Funds: Lawsuit*, INSTITUTIONAL INVESTOR (July 21, 2020), https://www.institutionalinvestor.com/article/b1mlj29jx9wjsy/Teachers-Pension-Lost-774M-in-Allianz-Volatility-Funds-Lawsuit (accessed July 27, 2020).

forthcoming with information than we would have hoped in such a critical time for investors" and that Aon was "disappointed that multiple discretionary restructuring efforts exposed the portfolio to further downside risk, rather than accept modest losses and aim to recover in a reasonable time period as Allianz has done in previous volatility episodes."[24] Aon further noted that while AllianzGI had "proposed a new portfolio structure going forward," Aon was "unable to have confidence in Allianz's ability to execute at this time given the poor management of the original restructure."[25] Steve Voss, a senior partner at Aon with personal knowledge of the events that transpired later commented that AllianzGI's actions represented a "failure of risk management, and what struck us most profoundly was the lack of any independent risk assessment or risk controls put into place which we had understood to be a cornerstone of the investment strategy."[26]

54.     A review of the Alpha 250 Fund's positions as of September 30, 2019 similarly indicates a deviation from the Structured Alpha Fund risk profile and investment mandate. For example, although AllianzGI assured its investors that it would "never make a forecast on the direction of equities or volatility," it entered into positions which led to the Structured Alpha Funds being short puts and short volatility. Upon information and belief, these short put positions would cause significant losses when the equity markets fell from 1-20%, which incorporates the range that AllianzGI deemed a market crash and which the Fund ensured protection against.

---

[24]*Flash Report: Allianz Structured Alpha – Rating Downgraded to "Sell"*, AON GLOBAL INVESTMENT MANAGEMENT (Mar. 27, 2020).

[25] *Id.*

[26] Rob Kozlowski, *San Diego City Employees terminates AllianzGI*, PENSIONS & INVESTMENTS (May 12, 2020), https://www.pionline.com/pension-funds/san-diego-city-employees-terminates-allianzgi (accessed July 27, 2020).

55.     In addition, an analysis of the "vega" of the Fund's equity options (i.e., the measure of the sensitivity of the price of an options contract to the volatility of the underlying asset), reflects that the Fund was net short vega for all maturities, meaning that the Fund was guaranteed to lose money when market volatility rose, which, in fact, occurred.

56.     AllianzGI also entered into VIX options which left the Fund net short in its volatility position. Because VIX moves upwardly rapidly when the S&P 500 moves down rapidly, the net short VIX position AllianzGI entered was the functional equivalent of selling puts on the S&P 500. Again, given the market conditions during February and March 2020, such positions would have exposed AllianzGI to substantial losses.

57.     With respect to the Fund's downside protection, AllianzGI purchased equity puts which would only generate positive returns after the market dropped by more than 30-40% over a three week period. These equity put positions were not reasonably calculated to protect the Fund's investment strategy and were symbolic positions with no economic benefit. Further, with respect to the VIX options it sold, AllianzGI had no protection for large VIX moves whatsoever.

58.     In sum, it appears that AllianzGI entered into a strategy which has been described as "picking up pennies in front of a steamroller" and likened to playing Russian roulette. It would have been profitable had the market remained quiet, but AllianzGI failed to account for any other market condition.

59.     After learning that the core mandate of the Structured Alpha Funds—to always be hedged against a sharp market downturn—had been abandoned, resulting in catastrophic losses, Fairfield requested to redeem its investment in the Alpha US 250 fund. By that time, Fairfield had suffered a loss of at least $11.6 million due to AllianzGI's negligent mismanagement of the Structured Alpha Funds.  Publicly available information to date reflects that investors in the

Structured Alpha Funds have lost hundreds of millions, if not billions, of dollars as a result of AllianzGI's conduct.

## CLASS ACTION ALLEGATIONS

60.     Plaintiffs bring this action as a class action pursuant to Federal Rules of Civil Procedure 23(a) and 23(b)(3).

61.     Plaintiffs seek class certification of claims for negligence, breach of fiduciary duty and breach of contract on behalf of a class defined as follows (the "Structured Alpha Class"):

> All persons or entities who held an investment and/or had funds invested in (1) AllianzGI Structured Alpha U.S. Equity 250 Fund, (2) AllianzGI Structured Alpha Global Equity 500 Fund, (3) AllianzGI Structured Alpha Global Equity 350 Fund, and/or (4) AllianzGI Structured Alpha U.S. Equity 500 Fund from January 1, 2020 to the present and were damaged thereby.

62.     In the alternative, Plaintiffs seek certification of claims for negligence, breach of fiduciary duty and breach of contract on behalf of a subclass defined as follows (the "Alpha 250 Subclass"):

> All persons or entities who held an investment and/or had funds invested in the AllianzGI Structured Alpha U.S. Equity 250 Fund from January 1, 2020 to the present and were damaged thereby.

63.     Collectively, the Structured Alpha Class and the Alpha 250 Subclass are the referred to as the "Classes."

64.     Plaintiffs reserve the right to expand, narrow or otherwise modify or refine the definition of the Classes based on additional information obtained through further investigation and discovery, and/or in order to address or accommodate any of the Court's manageability concerns.

65.     Excluded from the Classes are: (a) any Judge or Magistrate Judge presiding over this action and members of their staff, as well as members of their families; (b)  Defendant and Defendant's predecessors, parents, successors, heirs, assigns, subsidiaries, and any entity in which any Defendant or its parents have a controlling interest, as well as Defendant's current or former employees, agents, officers, and directors; (c) entities or persons who properly execute and file a timely request for exclusion from the Class or Subclass; (d) entities or persons whose claims in this matter have been finally adjudicated on the merits or otherwise released; (e) counsel for Plaintiffs and Defendant; and (f) the legal representatives, successors, and assigns of any such excluded persons.

66.     **Ascertainability**. The proposed Classes are readily ascertainable because they are defined using objective criteria so as to allow class members to determine if they are part of the Classes. Further, the members of the Classes can be readily identified through records and information in Defendants' possession, custody or control.

67.     **Numerosity**. The Classes are so numerous and geographically dispersed that joinder of individual members is impracticable. The exact number of members of the Classes, as herein identified and described, is not known to Plaintiffs at this time and can only be ascertained through appropriate discovery, but given the billions managed by AllianzGI in the Structured Alpha Funds, Plaintiffs believe that there are hundreds of class members.

68.     **Commonality and Predominance**. Common questions of fact and law exist for each cause of action and predominate over questions solely affecting individual members of the Classes, including the following:

        a.   Whether Defendant failed to execute the Structured Alpha investment strategy;

        b.   Whether Defendant deviated from the Structured Alpha investment mandate;

c.   Whether Defendant and its affiliates implemented and adhered to the Structured Alpha risk management and control;

d.   Whether Defendant restructured the Structured Alpha Funds during the first quarter of 2020 (and thereafter) to the detriment of investors and the Funds and in contravention of the Funds' investment mandate;

e.   Whether Defendant made investment decisions and entered into trades out of self-interest, and adverse to the interests of investors in the Structured Alpha Funds;

f.   Whether Defendant engaged in the course of conduct described herein;

g.   Whether Defendant's conduct constituted negligence;

h.   Whether Defendant's conduct constituted a breach of fiduciary duty;

i.   Whether Defendant's conduct constituted a breach of contract;

j.   Whether Plaintiff and the Classes are entitled to monetary damages; and

k.   The measure of damages suffered by Plaintiff and the members of the Classes.

69.   **Typicality**. Plaintiffs' claims are typical of the claims of the members of the Classes. Plaintiffs and the members of the Classes sustained damages arising out of Defendant's common course of conduct as described in this Complaint. The injuries of Plaintiffs and each member of the Classes were directly caused by Defendant's wrongful conduct, and Plaintiffs and the members of the Classes assert similar claims for relief.

70.   **Adequacy**. Plaintiffs have and will continue to fairly and adequately represent and protect the interests of the Classes. Plaintiffs have retained counsel competent and experienced in complex litigation and class actions. Plaintiffs have no interest that is antagonistic to those of the Classes, and Defendants have no defenses unique to Plaintiffs. Plaintiffs and their counsel are committed to vigorously prosecuting this action on behalf of the members of the

Classes, and they have the resources to do so. Neither Plaintiffs nor Plaintiffs' counsel has any interest adverse to those of the other members of the Classes.

71.    **Substantial Benefits**. This class action is appropriate for certification because class proceedings are superior to other available methods for the fair and efficient adjudication of this controversy and joinder of all members of the Classes is impracticable. The prosecution of separate actions by individual members of the Classes would impose heavy burdens upon the Courts and Defendant, would create a risk of inconsistent or varying adjudications of the questions of law and fact common to members of the Classes, and would be dispositive of the interests of the other members not parties to the individual adjudications or would substantially impair or impede their ability to protect their interests. This proposed class action presents fewer management difficulties than individual litigation, and provides the benefits of single adjudication, economies of scale, and comprehensive supervision by a single court. Class treatment will create economies of time, effort, and expense and promote uniform decision-making.  This proposed class action is manageable.  Plaintiffs know of no special difficulty to be encountered in the maintenance of the action that would preclude its maintenance as a class action.

**CLAIMS FOR RELIEF**

**FIRST CLAIM FOR RELIEF**

**NEGLIGENCE**

72.    Plaintiffs incorporate the foregoing allegations as if fully set forth herein.

73.    Based on its position as Managing Manager and Investment Manager of the Structured Alpha Funds, and the privity between AllianzGI and the Plaintiffs and the Classes established by the Subscription Agreements, PPMs, and LLC Agreements, AllianzGI owed a

duty to exercise reasonable care in properly protecting the Structured Alpha Funds against severe market downturns, as described herein.

74.     AllianzGI breached its duty to Plaintiff and the Class and Subclass when it failed to execute and/or adhere to its stated put spread strategy to provide structural risk protections to the Structured Alpha Funds to ensure protection from severe losses in any market environment.

75.     AllianzGI breached its duty by ignoring or disregarding warning signs of increased market volatility during the first quarter of 2020, and/or the assumptions it had in place or the firm-level guidance from AllianzSE's chief economist.

76.     AllianzGI breached it duty by failing to properly conduct stress tests to ensure that the Structured Alpha Funds could endure a rapid market downturn and/or low market liquidity, and/or disregarded the results of those tests.

77.     Allianz GI breached its duty by failing to follow or adhere to risk management and controls in place for the Structured Alpha Funds.

78.     AllianzGI breached its duty by negligently restructuring the Structured Alpha Funds, which locked in and exacerbated the losses suffered by the Structured Alpha Funds.

79.     As a direct and proximate result of Defendants' wrongful conduct as described herein, Plaintiff and the Classes have suffered actual damages in an amount to be proven at trial.

**SECOND CLAIM FOR RELIEF**
**BREACH OF FIDUCIARY DUTY**

80.     Plaintiffs incorporate the foregoing allegations as if fully set forth herein.

81.     AllianzGI was the Investment Manager and Managing Member of the Structured Alpha Funds and therefore owed a fiduciary duty to Plaintiff and the Classes.

82.     Further, based on AllianzGI's appointment as Plaintiffs' and the Classes' representative and attorney-in-fact, AllianzGI owed a fiduciary duty of loyalty and care to Plaintiffs and the Classes. AllianzGI therefore had a duty to act solely for the benefit of Plaintiff and the Class and not make any decisions based on AllianzGI's self-interest or economic benefit.

83.     AllianzGI had a fiduciary duty to Plaintiffs and the Classes to exercise the care, loyalty, skill and judgment that a reasonably prudent investment manager would exercise in a similar position, and under similar circumstances. AllianzGI was therefore obligated, among other things, to conduct stress testing that adequately evaluated whether the Structured Alpha Funds could survive in any market condition, including the market conditions which existed as described herein and respond accordingly, to appropriately restructure the Structured Alpha Funds' positions if the stress tests revealed vulnerabilities, to appropriately respond to market conditions, including those which existed as described herein, to respond appropriately to weakening or failing Fund positions, to adhere to risk management and controls in place for the Structured Alpha Funds, and to execute the investment objectives and strategy of the Structured Alpha Fund for the benefit of the investors, rather than solely for the economic benefit of AllianzGI – all of which Allianz failed to do.

84.     AllianzGI breached its fiduciary duty to Plaintiffs and the Classes by failing to execute and/or adhere to its stated put spread strategy to provide structural risk protections to the Structured Alpha Funds to ensure protection from severe losses in any market environment.

85.     AllianzGI breached its fiduciary duty to Plaintiffs and the Classes by ignoring and/or disregarding warning signs of increased market volatility during the first quarter of 2020, and/or the assumptions it had in place.

86.     AllianzGI breached its fiduciary duty to Plaintiffs and the Classes by failing to conduct stress tests to ensure that the Structured Alpha Funds could endure a rapid market downturn and/or low market liquidity, or by disregarding the results of those tests.

87.     AllianzGI breached its fiduciary duty to Plaintiffs and the Classes by restructuring the Structured Alpha Funds that locked in and exacerbated the losses suffered by the Structured Alpha Funds.

88.     As a direct and proximate result of Defendant's wrongful conduct as described herein, Plaintiff and the Classes have suffered actual damages in an amount to be proven at trial.

## THIRD CLAIM FOR RELIEF

### BREACH OF CONTRACT

89.     Plaintiffs incorporate the foregoing allegations as if fully set forth herein.

90.     AllianzGI had contractual obligations to Plaintiffs and the Classes pursuant to the Structured Alpha Agreements, including the PPM, Subscription Agreement and LLC Agreement. The PPM required AllianzGI to set up a beta component for each Fund consisting of "a futures trading program, cash investments, exchange traded funds, equity swaps or securities to achieve exposure to" benchmark indexes. The PPM stated that this alpha component would "consist of investments in puts and calls on equity indexes through the use of a proprietary model to construct option spreads" designed to "create option based profit zones that, upon expiration of the options, will capture positive payoffs if the level of the underlying index (or other instrument) ends up within the profit zone." AllianzGI was obligated to "optimize spread positions and profit zones based on (a) targeted positive return potential, (b) structural risk protections, (c) collateral management, and (d) flexibility to restructure profit zones if necessary."

91.     The Structured Alpha agreements prohibited AllianzGI from taking unlawful action in connection with the management of Fund assets, including engaging in negligent conduct.

92.     AllianzGI breached these contractual obligations by, as described herein, failing to build proper risk protections into the Alpha Funds' portfolios and by concealing and failing to timely and sufficiently advise notify Plaintiffs and the Classes of the material changes in AllianzGI's investment strategy, including those actions taken by AllianzGI during the market downturn in the first quarter of 2020 to the detriment of the Structured Alpha Funds and their investors.

93.     As a direct and proximate result of Defendant's wrongful conduct as described herein, Plaintiffs and the Classes have suffered actual damages in an amount to be proven at trial.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, on behalf of themselves and the proposed Class and Subclass, respectfully requests relief as follows:

A.     An order certifying this action and the Class and Subclass requested herein as a class action, designating Plaintiffs as the representatives of the Class and Subclass, and appointing Plaintiffs' counsel as Class and Subclass counsel;

B.     An order declaring that Defendants' actions constitute: (i) negligence; (ii) breach of fiduciary duty; and (iii) breach of contract, and that Defendants are liable to Plaintiffs and the Class and Subclass for damages arising therefrom;

C.     A judgment awarding Plaintiffs and Class and Subclass members all appropriate damages, in an amount to be determined at trial;

D.      A judgment awarding equitable, injunctive, and/or declaratory relief as may be appropriate.

E.      A judgment awarding Plaintiffs and the Class and Subclass prejudgment and post-judgment interest, as permitted by law;

F.      A judgment awarding Plaintiffs and the Class and Subclass costs and fees, including attorneys' fees, as permitted by law; and

G.      Grant such other legal, equitable or further relief as the Court may deem just and proper.

<u>**DEMAND FOR JURY TRIAL**</u>

Plaintiffs demand a trial by jury for all issues so triable.

Dated:  July 27, 2020                          Respectfully submitted,

**SILVER GOLUB & TEITELL LLP**

*/s/ David S. Golub*

David S. Golub
Steven L. Bloch
Ian W. Sloss
**SILVER GOLUB & TEITELL LLP**
184 Atlantic Street
Stamford, CT 06901
Telephone: (203) 325-4491
Facsimile: (203) 325-3769
dgolub@sgtlaw.com
sbloch@sgtlaw.com
isloss@sgtlaw.com

*Attorneys for Plaintiff*